July 30, 2004

EMORY G. SNELL, JR.
PO Box 8000
Shirley, MA  01464-8000

Mr. Justice Joseph L. Tauro
United States District Court
District of Massachusetts
1 Courthouse Way
Boston, MA. 02210

SUBJ: LAFAUCI v. CUNNINGHAM,
U.S.D.C. No. 98-12328 JLT

Dear Judge Tauro:

In regards to your opinion in the above captioned matter, I write again today, to request the assistance of the Court. Like LAFAUCI, I suffer the grave ineptness of the Treasurer, Amy Owens, At Souza-Baranowski Corr. Ctr. ("SBCC"). Accordingly, on or About Feb. 6, 2004, my prison trust account was arbitrarily "frozen" at $24.44/100. This of course happened capriciously, as I was not afforded notice or opportunity to be heard, nor were my numerous grievances fruitful, as my account continues to remain inassessible. As this Court opined in LAFAUCI, 28 USC §§ 1915(b)(2), requires the deduction of 20% of monthly trust account balances to be paid sequentially, which has not been the case at SBCC, as demonstrated.

## INDIGENT MAIL

TO: _Snell, Emory_    UNIT: _J 2_

RE:   Outgoing Mail

The attached outgoing mail is being returned to you for the following reason(s).

_____ Non indigent - a total of $10.00 or less in your account for the past sixty (60) days.

_____ You have exceeded the amount of free letters that you are entitled to - three (3) personal letters, per week,  weighing one (1) ounce or less that use one (1) first class stamp each.

_____ Indigent mail is first class only and does not include certified mail unless you have a court order stating that the DOC must pay

_____ Your full name , number, and return address must  appear on the upper left hand corner of the envelope.

___✓_____ CMR 481.10 states for legal mail "where necessary" to any <u>court official</u>.

_____ Other: _____

_____

_____

substantial issue of ineffective assistance of trial counsel. See Commonwealth v. Epsom, 422 Mass. 1002, 1003 (1996). The Grand Jury minutes indicate that there may have been an alibi witness who could have substantiated that Mr. Snell "was not" at the scene of the crime at the alleged time of the offense. Trooper Sabota testified that Mr. Snell checked in to the Cape Codder Hotel at approximately 10:30 P.M. That testimony was that on the following morning Mr. Snell called "the front desk prior to 7:00 a.m. to check out." Grand Jury Minutes attached hereto as Exhibit D. This testimony suggested that a witness may be available to verify that Mr. Snell was not at the scene of the crime at the time that he was alleged to have been seen there by a witness.

The investigation in this case was conducted by James Mills who has since been charged with a number of felony charges. Attached hereto as Exhibit E are copies of Grand Jury Indictments against Mr. Mills. Also attached as part of Exhibit is a copy of a newspaper article reprinted from the Boston Herald, indicating that Mr. Mills was convicted in October, 1997, of larceny and fraud arising from "submitting grossly inflated bills to the Committee For Public Counsel Services." That newspaper article indicates that Mr. Mills received more than $500,000 from CPCS in fiscal years 1994 and 1995.



**the University of Health Sciences**

1750 Independence Avenue • Kansas City, Missouri 64106-1453 • 816. 283.2000 • www.uhs.edu

College of Osteopathic Medicine

March 10, 2004

Dr. Richard Evans
Office of the Chief Medical Examiner
720 Albany Street
Boston, MA  02118

Dear Dr. Evans:

On November 26, 2003, I requested recuts of the glass slides on the autopsy of Elizabeth Snell – autopsy case #CME95-000844.    I wrote directly to Dr. Zane at the Commonwealth of Massachusetts, Office of the Chief Medical Examiner, Southeastern Regional Office in Pocasset, MA.

As I indicated in the letter, Belinda L. Souza has agreed to pay any fee.

So far, I have heard nothing at all from Dr. Zane or the Pocasset office.

Since it has been a considerable amount of time since my earlier request, I hope it will be possible for me to review the glass slides without further delay.

Sincerely,

Ed Friedlander, M.D.
Chief of Pathology

/gr

cc:    Dr. Zane
       Emory Snell
       Belinda Souza

1   homicide, correct?

2   A   Correct.

3   Q   And you've never been in charge of investigation of

4   a life felony, correct?

5   A   Correct.

6   Q   And did you take notes regarding this case?

7   Handwritten notes?

8   A   A few.

9   Q   And you're directed to take handwritten notes or

10   suggested that you take handwritten notes in General

11   Order 1; is that not correct?

12   A   Yes, it's suggested.

13   Q   And it's also suggest suggested at 4.3.13 that all

14   handwritten notes must be kept, is that not correct,

15   until the case is closed?

16   A   That's the suggestion, yes.

17   Q   Does it state there --

18   A   Yes, it does.

19   Q   And, in fact, the exact wording is, All

20   investigative activity should be properly documented

21   by the investigative officer; and all original hand

22   notes must be retained until the case is closed, even

23   if the notes are reduced to writing; is that correct?

24   A   That's what it states, correct.

1   Q   And you destroyed your handwritten notes, didn't

2   you?

3   A   Correct.

4   Q   And do you know when the -- what time the order was

5   given to arrest or stop Emory Snell?

6   A   The .exact time?  No, I don't.

7   Q   Well, do you know when the murder warrant went out?

8   When it was obtained?

9   A   If I refer to my notes, I can refresh my memory.

10  Q   Refer to them.  Trooper, anytime you wish to refer

11  to your notes when I'm questioning you, feel free to

12  do so.

13  A   At approximately 20:59 hours.

14  Q   What time is that in?

15  A   8:59 p.m.

16  Q   And even prior to 8:59 p.m., a bulletin had gone out

17  to stop -- to take him into custody, Emory Snell,

18  correct?

19  A   Can you say that question again.

20  Q   A bulletin had gone out to stop and take into

21  custody Emory Snell, correct?

22  A   I -- I don't know.  I can't answer that question.

23  Q   Well, a Massachusetts State Trooper, according to

24  the testimony of --

764 N.E.2d 854, 436 Mass. 387, Com. v. Mills, (Mass. 2002)                                    **Page 1**

**\*854  764 N.E.2d 854**

436 Mass. 387

Supreme Judicial Court of Massachusetts,
Suffolk.

COMMONWEALTH
v.
James O. MILLS.
Argued Dec. 4, 2001.
Decided March 22, 2002.

Defendant, a former police officer on disability retirement, was convicted in the Superior Court Department, Suffolk County, Thomas E. Connolly, J., of two counts of larceny by false pretenses and three counts of larceny, and was sentenced as "common and notorious thief." Defendant appealed. The Appeals Court, 51 Mass.App.Ct. 366, 745 N.E.2d 981, reversed in part and remanded. On grant of Commonwealth's application for further appellate review, the Supreme Judicial Court, Spina, J., held that: (1) defendant could not be convicted of traditional larceny under theory that he under-reported his earnings to the retirement board to prevent it from seeking a refund of the pension money; (2) defendant's filing of reports in which he under-reported his earnings did not establish essential elements of embezzlement; (3) evidence was sufficient to support defendant's larceny by false pretenses conviction; and (4) remand for resentencing before different judge was required.

Reversed in part, and remanded.

West Headnotes

[1] Larceny ⬳12
234 ----
   234I Offenses and Responsibility Therefor
      234k11 Taking
   234k12 In General.
For purposes of the larceny statute, the word steal includes the criminal taking or conversion by way either of larceny, embezzlement or obtaining by false pretenses. M.G.L.A. c. 266, § 30.

[2] Larceny ⬳55
234 ----
   234II Prosecution and Punishment
      234II(B) Evidence
      234k54 Weight and Sufficiency
   234k55 In General.
Larceny can be established by evidence that would have warranted a conviction upon any one of the three

formerly separate charges of larceny, embezzlement, or obtaining by false pretenses. M.G.L.A. c. 266, § 30.

[3] Larceny ⬳2
234 ----
   234I Offenses and Responsibility Therefor
   234k2 Statutory Provisions.
The purpose of the merger of three formerly separate charges of larceny, embezzlement, or obtaining by false pretenses into one statutory crime of larceny was to eliminate the possibility that a defendant indicted for one of the crimes would escape punishment if the proof at trial established another of the crimes. M.G.L.A. c. 266, § 30.

[4] Larceny ⬳2
234 ----
   234I Offenses and Responsibility Therefor
   234k2 Statutory Provisions.
Criminal dealing with personal property with intent to steal statute permits convictions to be supported by evidence that the defendant's theft was committed in any manner condemned by the law. M.G.L.A. c. 277, § 41.

[5] Larceny ⬳55
234 ----
   234II Prosecution and Punishment
      234II(B) Evidence
      234k54 Weight and Sufficiency
   234k55 In General.
Proof offered by the Commonwealth with respect to the three counts of "stealing" from the city retirement board could be used to support any of the theories of larceny even though the Commonwealth did not elect its theory of the manner in which the alleged larcenies were committed by defendant, a former police officer on disability retirement; to require the Commonwealth to elect a particular theory of larceny would have permitted defendant to frustrate the ends of justice in derogation of the specific legislative intent to eliminate the merely technical differences between three cognate and similar offenses of larceny, embezzlement, or obtaining by false pretenses. M.G.L.A. c. 266, § 30.

[6] Criminal Law ⬳1144.13(2.1)
110 ----
   110XXIV Review
      110XXIV(M) Presumptions
         110k1144 Facts or Proceedings Not Shown by Record
            110k1144.13 Sufficiency of Evidence
               110k1144.13(2) Construction of Evidence
               110k1144.13(2.1) In General.

© 2003 West, a Thomson business. No claim to original U.S. Govt. works.

Bribery
Ch. 268A, § 2(a)

# *Commonwealth of Massachusetts*

Middlesex, To wit:

At the SUPERIOR COURT, begun and holden at the CITY OF CAMBRIDGE,

within and for the County of Middlesex, on the Tuesday after the First Monday of September in the year of our

Lord one thousand nine hundred and ninety-six.

THE JURORS for the COMMONWEALTH OF MASSACHUSETTS on their oath present,

That   JAMES O. MILLS

on diverse dates from on or about October 18, 1993 to on or about December 4, 1995, at Cambridge, in the

County of Middlesex, and at other places unknown, did, directly and indirectly, corruptly give, offer or promise

money to Joseph M. Marshall, a state employee, with an intent to influence Marshall's official acts or acts within

his official responsibilities.

Against the peace of said Commonwealth, and contrary to the form of the statute in such case

made and provided.

A true bill.

*Foreman of the Grand Jury*

*Assistant Attorney General*

Superior Court                                    *September Sitting, 1996*

_____ 6TH day - *Returned by the Grand Jury and filed in Court.*

*Assistant Clerk*

ORIGINAL

96-1641-001

00
150

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
CRIMINAL ACTION
NO. 91-2797-D

COMMONWEALTH

v.

JOHN MILLEY

MIDDLESEX SUPERIOR COURT<br>EDWARD J. SULLIVAN<br>CLERK MAGISTRATE<br>03 SEP 10 AM 10: 56<br>RECEIVED

**<u>MEMORANDUM OF DECISION AND ORDER ON<br>DEFENDANT'S MOTION FOR A NEW TRIAL</u>**

On May 20, 2003, this court, pursuant to a remand by the Appeals Court, held a two-day evidentiary hearing to determine whether there was a genuine conflict of interest on the part of defendant's attorney, Paul Cacchiotti ("Cacchiotti"), when he retained the services of James O. Mills ("Mills"), as a private investigator. This alleged conflict occurred during the investigation and trial of rape allegations, which ultimately led to the defendant's, John Milley ("Milley"), conviction. On June 25, 2002, the Appeals Court issued a remand instructing this court to hold an evidentiary hearing to determine whether Milley's case was inadequately investigated or not investigated at all; and "whether those alleged failures can be linked to the defendant's assertion of a conflict of interest of his trial counsel (as distinct from mere ineffectiveness not predicated on a genuine conflict) . . . ." <u>Commonwealth</u> v. <u>Milley</u>, 00-P-1366, at 6 (June 25, 2002) (Appeals Court Rule 1:28). For the following reasons, Milley's Motion for a New Trial is **<u>ALLOWED</u>**.

68/

9/11/03 Both sides

**\*144** 139 F.Supp.2d 144

United States District Court, D. Massachusetts.

Anthony LAFAUCI, Plaintiff,
v.
Michael CUNNINGHAM, William, Coalter,
Angelo Kannbatsis, John Novak, James B.
Bailey, Paul Curran, Joel Robinson, Jay Hislop,
and John Doe, Defendants.

No. Civ.A. 98-12328-JLT.
April 4, 2001.

Inmate who brought pro se, in forma pauperis § 1983 action against prison officials moved to correct assessment of filing fees. The District Court, Tauro, J., as a matter of first impression, held that statute requiring monthly assessment against indigent prisoner's income to pay filing fees requires that multiple filing fees be collected sequentially.

Motion granted.

West Headnotes

[1] Constitutional Law ⚖➞328

92 ----
92XIII Right to Justice and Remedies for Injuries
92k328 Courts to Be Open.

Indigent prisoners have a fundamental constitutional right of access to the courts that guarantees prisoners a reasonably adequate opportunity to present to the court any claims of fundamental constitutional rights violations.

[2] Federal Civil Procedure ⚖➞2734

170A ----
170AXIX Fees and Costs
170Ak2732 Deposit or Security
170Ak2734 Forma Pauperis Proceedings.

[See headnote text below]

[2] Federal Courts ⚖➞662.1

170B ----
170BVIII Courts of Appeals
170BVIII(E) Proceedings for Transfer of Case
170Bk662 Proceedings in Forma Pauperis
170Bk662.1 In General.

Statute requiring that indigent prisoner proceeding in forma pauperis be assessed 20 percent of his or her preceding month's income to pay filing fees for civil actions and appeals, so long as balance in prison account exceeds $10.00, requires that multiple filing fees be collected sequentially, rather than simultaneously. 28 U.S.C.A. § 1915(b)(2).

**\*145** Anthony Lafauci, Cheshire, CT, for Plaintiff.

Mary E. Schwarzer, Attorney General Office, Concord, NH, Beatriz E. Van Meek, Boston, MA, for Defendants.

MEMORANDUM

TAURO, District Judge.

Pro Se Plaintiff Anthony Lafauci brings this 42 U.S.C. § 1983 (2000) action against the following prison officials: Michael Cunningham, Angelo Kannbatis, John Novak, James Bailey, Paul Curran, Joel Robinson, Jay Hislop, and John Doe. Lafauci alleges that Defendants violated his First, Fifth, Eighth and Fourteenth Amendment rights by using excessive force against him and denying him proper medical care. Lafauci's Motion to Correct Filing Fees now is before this court. For the reasons stated below, his Motion is ALLOWED.

*BACKGROUND*

Lafauci applied to this court and was granted permission to proceed *in forma pauperis.* Indigent prisoners, unlike other indigent litigants, must pay filing fees in installments based upon a statutory formula. *See* 28 U.S.C. § 1915(b) (2000). The statute provides that an indigent prisoner be assessed 20% of his/her preceding month's income, so long as his/her prisoner account balance exceeds $10.00. *See id.* at § 1915(b)(2).

Lafauci filed four cases after being incarcerated, all of which required payment of a filing fee. He initially was incarcerated at the Massachusetts Correctional Institute ("MCI") Cedar Junction in Walpole, Massachusetts. MCI Cedar Junction interpreted the 20% statutory assessment as a maximum monthly assessment for all filing fees, regardless of the number of lawsuits filed. MCI Cedar Junction accordingly assessed Lafauci a total of 20% of his monthly income to pay his four filing fees.

Lafauci later was transferred to **Souza Baranowski** Correctional Center ("**Souza Baranowski**") in Shirley,

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.



March 29, 2004

Edward Ficco
Superintendent
Souza-Baranowski Correctional Center
P.O. Box 8000
Shirley, Massachusetts  01464

Re: Emory G. Snell, Jr., W-59191

Dear Superintendent Ficco:

I am a lawyer, and have been designated by the
Massachusetts Committee for Public Counsel Services to
review the prosecution of Emory Snell, an inmate at Souza-
Baranowski.  An important part of that process is to
examine papers which in many cases (and in this one) are
only available through the inmate himself.  Mr. Snell has
called to report that, although his access to his inmate
account was "frozen" in mid-February, your office has
declined to honor his request to treat his outgoing
correspondence to me according to the regulations governing
indigent prisoners' mail.

While my cursory review of the applicable regulations would
appear to support his contention, I am well aware that
there may be a number of circumstances about which I am
wholly unaware--and which have governed your determination.
I also do not request that Mr. Snell be accorded privileges
unavailable to others.  What I do hope is that you can
propose some mechanism by which I can obtain the materials
Mr. Snell wishes to provide me--including the option of
permitting me to prepay the cost of postage.  I look
forward to your reply, which I hope can advance a
cooperative solution.

                              Sincerely yours,


                              Charles K. Stephenson

CKS/rm



**Commonwealth of Massachusetts**
County of Middlesex
The Superior Court

CIVIL DOCKET#: **MICV1999-01074-B**

RE:   Snell Jr v DiPaolo et al

TO:   Emory G Snell Jr
PO Box 8000
Shirley, MA 01464

---

## NOTICE OF DOCKET ENTRY

You are hereby notified that on **05/24/2000** the following entry was made on the above referenced docket:

PROCEDURAL ORDER: Following the hearing held in the captioned action on **May 23, 2000, it is hereby ORDERED as follows: 1. All discovery is to be completed no later than September 29, 2000. To that end, Plaintiff shall promptly serve interrogatories and a request for production of documents on defendants and defendants shall take prompt steps to secure the deposition of plaintiff and serve any interrogatories or document requests they desire. 2. Plaintiff shall be allowed access to his legal papers pertaining to this case at reasonable times and, in any event, for no fewer than 8 hours per week. The location and other conditions of such access shall be in accordance with the Department of Correction's general policies on such matters. The Department of Correction shall promptly stamp and mail all papers that bear the docket number of this case of the Middlesex Superior Court or to the legal department of the Department of Correction. 3. All motion for summary judgment shall be served no later than October 27, 2000. Said motions shall be heard at the first available date thereafter. 4. Any motions filed in this case other than those designed to carry out the terms of this Order or to secure an amendment to a pleading pursuant Mass. R. Civ. P. 15 shall be docketed and deemed denied on the date docketed without further court action. (James F. McHugh, Justice, Superior Court) dated 5/23/2000, entered on docket and copies mailed 5/24/2000**

Dated this  24th day of May, 2000.

Edward J. Sullivan,
Clerk of the Courts

## Prisons

### Discipline - Urine Sample

Where a plaintiff inmate was disciplined for failing to produce a urine sample within two hours as ordered, the plaintiff should be granted certiorari relief, as the defendant prison officials did not abide by Department of Correction regulations.

"Here, it is crystal clear that there was not substantial evidence to support the guilty findings in D-Report 1242. Indeed, it is crystal clear that DOC blatantly ignored its own policies regarding the collection of urine samples and the imposition of disciplinary sanctions for refusing to give such a sample. ...

"The uncontradicted evidence in the Administrative Record demonstrates that [plaintiff Manuel] Mello contended that the reason he could not provide a sample was because urination problems were a side effect of his medication. ... [W]hen Mello claimed that he could not provide a urine sample within the required two hours because he suffered from urination problems as a side effect of his medication, regardless of whether this problem was documented in Mello's medical records, DOC's policy required that he be secured in a dry cell and left there until he urinated. ...

"The discipline imposed against Mello at MCI Souza-Baranowski was not merely unsupported by substantial evidence; it was an affront to justice that should cause those in authority at DOC to take a long, hard look at the manner in which prisoners are disciplined at that facility. It is unconscionable that a prisoner should spend 30 days in isolation and be deprived of visits and the use of the canteen for half the year — cause those in authority at MCI Souza-Baronowski ignored a DOC policy that specifically recognizes that those with medical problems may need more than two hours to urinate. If sanctions this severe can be handed down so cavalierly in this case, one must ask whether fairness and judgment are the rule or the exception in other disciplinary matters."

Subscribers to Massachusetts Lawyers Weekly who have registered for our Internet Archives can find the full text of the decision on Lawyers Weekly's website, www.masslawyersweekly.com.

*Mello v. Ficco, et al. (Lawyers Weekly No. 12-051-04) (11 pages) (Gants, J.) (Middlesex Superior Court) (Civil Action No. 02-5221) (Feb. 26, 2004).*

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### Inmate Transaction Report

Date :  20040406 11:09

| | | |
|---|---|---|
| Commit# : | W59191 | SOUZA-BARANOWSKI CORRECTIONAL |
| Name  : | SNELL, EMORY, G, JR | Statement From  20020101 |
| Inst  : | SOUZA-BARANOWSKI CORRECTIONAL | To  20040406 |
| Block  : | H2 | |
| Cell/Bed : | 11 /A | |

Page :   1

| Transaction Date | Type | Receipt # | Check No | Inst Name | Notes | Personal Income | Personal Expense | Savings Income | Savings Expense |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Total Transaction before this Period : | $0.00 | $0.00 | $0.00 | $0.00 |
| 20020930 09:43 | SB - Starting Balance | 242057 | | SBCC | | $8.36 | $0.00 | $0.00 | $0.00 |
| 20020930 09:43 | SB - Starting Balance | 242058 | | SBCC | | $0.00 | $0.00 | $0.00 | $0.00 |
| 20021018 12:10 | IS - Interest | 329869 | | SBCC | ~INTEREST CONVERTED FROM VAX | $0.01 | $0.00 | $0.00 | $0.00 |
| 20021213 13:26 | IS - Interest | 523450 | | SBCC | | $0.02 | $0.00 | $0.00 | $0.00 |
| 20030102 09:55 | IS - Interest | 624239 | | SBCC | | $0.02 | $0.00 | $0.00 | $0.00 |
| 20030115 08:52 | IS - Interest | 676188 | | SBCC | | $0.02 | $0.00 | $0.00 | $0.00 |
| 20030204 09:35 | ML - Mail | 746526 | | SBCC | ~Emory Snell - father | $1,000.00 | $0.00 | $0.00 | $0.00 |
| 20030207 22:30 | CN - Canteen | 764314 | | SBCC | ~Canteen Date : 20030207 | $0.00 | $19.19 | $0.00 | $0.00 |
| 20030211 08:48 | IS - Interest | 774784 | | SBCC | | $0.02 | $0.00 | $0.00 | $0.00 |
| 20030214 22:30 | CN - Canteen | 802424 | | SBCC | ~Canteen Date : 20030214 | $0.00 | $10.91 | $0.00 | $0.00 |
| 20030220 11:20 | IC - Transfer from Inmate to Club A/c | 816697 | | SBCC | ~Payment for 6/29/02 photos~PHOTO - Z13~PHOTO - Z13 | $0.00 | $6.00 | $0.00 | $0.00 |
| 20030220 11:45 | EX - External Disbursement | 816787 | 15299 | SBCC | ~Filing fee #96-12082 GAO~Clerk, US District Court #96-12082 GAO | $0.00 | $8.36 | $0.00 | $0.00 |
| 20030220 11:46 | EX - External Disbursement | 816790 | 15300 | SBCC | ~Filing fee #96-12082 GAO paid in full~Clerk, US District Court #96-12082 GAO | $0.00 | $83.77 | $0.00 | $0.00 |
| 20030220 11:51 | EX - External Disbursement | 816810 | 15301 | SBCC | ~Filing fee #98-7574 paid in full~Clerk, US District Court #98-7574 | $0.00 | $105.00 | $0.00 | $0.00 |
| 20030220 12:02 | EX - External Disbursement | 816828 | 15302 | SBCC | ~Filing fee payment #98-2047~Clerk, US District Court #98-2047 | $0.00 | $11.23 | $0.00 | $0.00 |
| 20030221 15:24 | VC - Voided Check | 821296 | 15301 | SBCC | ~Filing fee #98-7574 paid in full~Clerk, US District Court #98-7574 | $105.00 | $0.00 | $0.00 | $0.00 |
| 20030221 15:26 | EX - External Disbursement | 821297 | 15362 | SBCC | ~Filing fee #98-7574 paid in full~Clerk, US District Court #98-7574 | $0.00 | $102.64 | $0.00 | $0.00 |
| 20030221 15:27 | EX - External Disbursement | 821298 | 15363 | SBCC | ~Filing fee payment #98-2047~Clerk, US District Court #98-2047 | $0.00 | $2.36 | $0.00 | $0.00 |
| 20030314 22:30 | CN - Canteen | 888702 | | SBCC | ~Canteen Date : 20030314 | $0.00 | $0.34 | $0.00 | $0.00 |
| 20030317 13:52 | CI - Transfer from Club to Inmate A/c | 890534 | | SBCC | ~canteen refund 214/03~W59191 SNELL,EMORY G JR PERSONAL~CANTEEN CORP. WASH ACCOUNT - Z6 | $10.91 | $0.00 | $0.00 | $0.00 |
| 20030317 14:30 | IC - Transfer from Inmate to Club A/c | 890690 | | SBCC | ~canteen refund given from wrong account~CANTEEN CORP. WASH ACCOUNT - Z6~CANTEEN CORP WASH ACCOUNT - Z6 | $0.00 | $10.91 | $0.00 | $0.00 |
| 20030317 14:33 | CI - Transfer from Club to Inmate A/c | 890701 | | SBCC | ~canteen refund 2/14~W59191 SNELL,EMORY G JR PERSONAL~KCN WASH ACCOUNT - Z5 | $10.91 | $0.00 | $0.00 | $0.00 |
| 20030318 07:46 | IS - Interest | 898521 | | SBCC | | $1.75 | $0.00 | $0.00 | $0.00 |
| 20030321 22:30 | CN - Canteen | 926242 | | SBCC | ~Canteen Date : 20030321 | $0.00 | $1.28 | $0.00 | $0.00 |
| 20030325 10:03 | EX - External Disbursement | 930535 | 15749 | SBCC | ~LEGAL WORK~BIN, LLC | $0.00 | $752.49 | $0.00 | $0.00 |
| 20030326 08:22 | IC - Transfer from Inmate to Club A/c | 933177 | | SBCC | ~Postage~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $0.60 | $0.00 | $0.00 |

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
## Inmate Transaction Report

**Date :  20040406 11:09**

| | | | |
|---|---|---|---|
| **Commit# :** | W59191 | **SOUZA-BARANOWSKI CORRECTIONAL** | Page : 2 |
| **Name :** | SNELL, EMORY, G, JR | **Statement From** 20020101 | |
| **Inst :** | SOUZA-BARANOWSKI CORRECTIONAL | **To** 20040406 | |
| **Block :** | H2 | | |
| **Cell/Bed :** | 11 /A | | |

| Transaction Date | Type | Receipt # | Check No | Inst Name | Notes | Personal | | Savings | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Income | Expense | Income | Expense |
| 20030328 22:30 | CN - Canteen | 947932 | | SBCC | ~Canteen Date : 20030328 | $0.00 | $3.28 | $0.00 | $0.00 |
| 20030408 10:04 | IS - Interest | 980892 | | SBCC | | $1.01 | $0.00 | $0.00 | $0.00 |
| 20030411 08:20 | IC - Transfer from Inmate to Club A/c | 1005819 | | SBCC | ~Postage~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $2.32 | $0.00 | $0.00 |
| 20030411 22:30 | CN - Canteen | 1008488 | | SBCC | ~Canteen Date : 20030411 | $0.00 | $2.56 | $0.00 | $0.00 |
| 20030415 11:32 | EX - External Disbursement | 1013045 | 16010 | SBCC | ~LEGAL WORK ON ACCOUNT~BIN, LLC | $0.00 | $12.00 | $0.00 | $0.00 |
| 20030418 09:22 | ML - Mail | 1028058 | | SBCC | ~Rfnd~Edward R Hamilton, bookseller | $2.95 | $0.00 | $0.00 | $0.00 |
| 20030418 22:30 | CN - Canteen | 1029945 | | SBCC | ~Canteen Date : 20030418 | $0.00 | $1.62 | $0.00 | $0.00 |
| 20030425 22:30 | CN - Canteen | 1051056 | | SBCC | ~Canteen Date : 20030425 | $0.00 | $2.26 | $0.00 | $0.00 |
| 20030509 09:20 | IS - Interest | 1101187 | | SBCC | | $0.01 | $0.00 | $0.00 | $0.00 |
| 20030509 22:30 | CN - Canteen | 1113078 | | SBCC | ~Canteen Date : 20030509 | $0.00 | $1.76 | $0.00 | $0.00 |
| 20030512 09:07 | ML - Mail | 1113570 | 503 | SBCC | ~Bin Consulting 38 Elm St Wakefield, MA 01880 | $5.00 | $0.00 | $0.00 | $0.00 |
| 20030516 22:30 | CN - Canteen | 1136136 | | SBCC | ~Canteen Date : 20030516 | $0.00 | $0.09 | $0.00 | $0.00 |
| 20030523 11:09 | ML - Mail | 1156649 | 504 | SBCC | ~BIN - 38 ELM ST | $5.00 | $0.00 | $0.00 | $0.00 |
| 20030523 22:30 | CN - Canteen | 1161756 | | SBCC | ~Canteen Date : 20030527 | $0.00 | $4.74 | $0.00 | $0.00 |
| 20030530 22:30 | CN - Canteen | 1181572 | | SBCC | ~Canteen Date : 20030530 | $0.00 | $0.27 | $0.00 | $0.00 |
| 20030602 10:25 | ML - Mail | 1182593 | 505 | SBCC | ~BIN - per ck | $5.00 | $0.00 | $0.00 | $0.00 |
| 20030606 22:30 | CN - Canteen | 1214709 | | SBCC | ~Canteen Date : 20030606 | $0.00 | $4.84 | $0.00 | $0.00 |
| 20030609 13:49 | VC - Voided Check | 1216747 | 15299 | SBCC | ~Filing fee #96-12082 GAO~Clerk, US District Court #96-12082 GAO | $8.36 | $0.00 | $0.00 | $0.00 |
| 20030609 13:55 | VC - Voided Check | 1216759 | 15300 | SBCC | ~Filing fee #96-12082 GAO paid in full~Clerk, US District Court #96-12082 GAO | $83.77 | $0.00 | $0.00 | $0.00 |
| 20030609 14:06 | VC - Voided Check | 1216785 | 15302 | SBCC | ~Filing fee payment #98-2047~Clerk, US District Court #98-2047 | $11.23 | $0.00 | $0.00 | $0.00 |
| 20030609 14:13 | VC - Voided Check | 1216811 | 15363 | SBCC | ~Filing fee payment #98-2047~Clerk, US District Court #98-2047 | $2.36 | $0.00 | $0.00 | $0.00 |
| 20030609 14:16 | EX - External Disbursement | 1216825 | 16593 | SBCC | ~MDL #1206 paid in full~Clerk, US District Court of Texas | $0.00 | $105.00 | $0.00 | $0.00 |
| 20030610 09:25 | ML - Mail | 1219378 | 00428305 | SBCC | ~96-12409 REFUND - U.S. DISTRICT COURT | $2.04 | $0.00 | $0.00 | $0.00 |
| 20030610 16:23 | IS - Interest | 1229284 | | SBCC | | $0.00 | $0.00 | $0.00 | $0.00 |
| 20030611 09:39 | ML - Mail | 1242773 | 506 | SBCC | ~BIN Consulting - per ck | $10.00 | $0.00 | $0.00 | $0.00 |
| 20030613 22:30 | CN - Canteen | 1261505 | | SBCC | ~Canteen Date : 20030613 | $0.00 | $7.58 | $0.00 | $0.00 |
| 20030616 10:15 | ML - Mail | 1262796 | | SBCC | ~BIN Consulting | $6.00 | $0.00 | $0.00 | $0.00 |
| 20030616 10:21 | ML - Mail | 1262864 | 507 | SBCC | ~BIN Consulting - per ck | $10.00 | $0.00 | $0.00 | $0.00 |
| 20030618 15:10 | IC - Transfer from Inmate to Club A/c | 1273247 | | SBCC | ~haircut week of 6/10-6/13~HAIRCUT REVENUE - Z3~HAIRCUT REVENUE - Z3 | $0.00 | $1.50 | $0.00 | $0.00 |

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### Inmate Transaction Report

Date :  **20040406 11:09**

| | | |
|---|---|---|
| Commit# : | W59191 | |
| Name  : | SNELL, EMORY, G, JR | |
| Inst  : | SOUZA-BARANOWSKI CORRECTIONAL | |
| Block  : | H2 | |
| Cell/Bed : | 11 /A | |

SOUZA-BARANOWSKI CORRECTIONAL

Statement From   20020101

To   20040406

Page :   3

| Transaction Date | Type | Receipt # | Check No | Inst Name | Notes | Personal Income | Personal Expense | Savings Income | Savings Expense |
|---|---|---|---|---|---|---|---|---|---|
| 20030620 22:30 | CN - Canteen | 1290496 | | SBCC | ~Canteen Date : 20030620 | $0.00 | $14.59 | $0.00 | $0.00 |
| 20030624 08:32 | ML - Mail | 1295811 | 1856 | SBCC | ~Emory Snell Sr - per ck | $8.00 | $0.00 | $0.00 | $0.00 |
| 20030625 08:35 | ML - Mail | 1300809 | | SBCC | ~BIN Consulting | $5.00 | $0.00 | $0.00 | $0.00 |
| 20030625 11:40 | IC - Transfer from Inmate to Club A/c | 1301822 | | SBCC | ~4th of July photos  non-visit~PHOTO - Z13~PHOTO - Z13 | $0.00 | $7.50 | $0.00 | $0.00 |
| 20030627 10:42 | ML - Mail | 1317684 | | SBCC | ~BIN Consulting | $8.00 | $0.00 | $0.00 | $0.00 |
| 20030627 22:30 | CN - Canteen | 1319751 | | SBCC | ~Canteen Date : 20030627 | $0.00 | $7.60 | $0.00 | $0.00 |
| 20030630 09:54 | ML - Mail | 1320590 | 508 | SBCC | ~BIN CONSULTING | $8.00 | $0.00 | $0.00 | $0.00 |
| 20030701 09:10 | ML - Mail | 1324595 | | SBCC | ~Emory Snell Sr | $8.00 | $0.00 | $0.00 | $0.00 |
| 20030701 13:45 | CI - Transfer from Club to Inmate A/c | 1325843 | | SBCC | ~photo refund from 4 of July~W59191 SNELL,EMORY G JR PERSONAL~PHOTO - Z13 | $7.50 | $0.00 | $0.00 | $0.00 |
| 20030702 08:46 | ML - Mail | 1329414 | | SBCC | ~BIN | $5.00 | $0.00 | $0.00 | $0.00 |
| 20030703 22:30 | CN - Canteen | 1345575 | | SBCC | ~Canteen Date : 20030703 | $0.00 | $32.66 | $0.00 | $0.00 |
| 20030707 10:45 | ML - Mail | 1347171 | 509 | SBCC | ~BIN PER-CHK | $8.00 | $0.00 | $0.00 | $0.00 |
| 20030707 12:15 | ML - Mail | 1347704 | | SBCC | ~EMORY SNELL SR. | $8.00 | $0.00 | $0.00 | $0.00 |
| 20030709 09:29 | ML - Mail | 1355960 | | SBCC | ~BIN | $5.00 | $0.00 | $0.00 | $0.00 |
| 20030709 16:11 | IS - Interest | 1363053 | | SBCC | | $0.01 | $0.00 | $0.00 | $0.00 |
| 20030711 22:30 | CN - Canteen | 1390701 | | SBCC | ~Canteen Date : 20030711 | $0.00 | $24.90 | $0.00 | $0.00 |
| 20030714 10:14 | ML - Mail | 1391792 | 510 | SBCC | ~BIN Consulting - per ck | $8.00 | $0.00 | $0.00 | $0.00 |
| 20030715 09:59 | ML - Mail | 1396404 | | SBCC | ~EMORY SNELL SR | $8.00 | $0.00 | $0.00 | $0.00 |
| 20030716 08:41 | ML - Mail | 1400683 | | SBCC | ~BIN Consulting | $5.00 | $0.00 | $0.00 | $0.00 |
| 20030718 22:30 | CN - Canteen | 1420558 | | SBCC | ~Canteen Date : 20030718 | $0.00 | $2.16 | $0.00 | $0.00 |
| 20030721 10:16 | ML - Mail | 1421619 | 511 | SBCC | ~BIN CONSULTING PER-CHK | $8.00 | $0.00 | $0.00 | $0.00 |
| 20030723 09:42 | ML - Mail | 1430323 | | SBCC | ~EMOREY SNELL SR. | $8.00 | $0.00 | $0.00 | $0.00 |
| 20030725 10:54 | EX - External Disbursement | 1447119 | 17102 | SBCC | ~Investigations/research~BIN,LLC | $0.00 | $30.95 | $0.00 | $0.00 |
| 20030725 22:30 | CN - Canteen | 1449132 | | SBCC | ~Canteen Date : 20030725 | $0.00 | $1.68 | $0.00 | $0.00 |
| 20030801 22:30 | CN - Canteen | 1476449 | | SBCC | ~Canteen Date : 20030801 | $0.00 | $5.66 | $0.00 | $0.00 |
| 20030806 08:33 | ML - Mail | 1486769 | | SBCC | ~E Snell Sr | $8.00 | $0.00 | $0.00 | $0.00 |
| 20030807 15:31 | IS - Interest | 1505802 | | SBCC | | $0.02 | $0.00 | $0.00 | $0.00 |
| 20030808 22:30 | CN - Canteen | 1521603 | | SBCC | ~Canteen Date : 20030808 | $0.00 | $9.80 | $0.00 | $0.00 |
| 20030812 10:55 | ML - Mail | 1527917 | | SBCC | ~E SNELL SR. | $8.00 | $0.00 | $0.00 | $0.00 |
| 20030815 22:30 | CN - Canteen | 1550569 | | SBCC | ~Canteen Date : 20030815 | $0.00 | $4.04 | $0.00 | $0.00 |

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### Inmate Transaction Report

Date :  **20040406 11:09**

| | | |
|---|---|---|
| Commit# : | W59191 | SOUZA-BARANOWSKI CORRECTIONAL |
| Name : | SNELL, EMORY, G, JR | Statement From    20020101 |
| Inst : | SOUZA-BARANOWSKI CORRECTIONAL | To    20040406 |
| Block : | H2 | |
| Cell/Bed : | 11 /A | |

Page :    4

| Transaction Date | Type | Receipt # | Check No | Inst Name | Notes | Personal Income | Personal Expense | Savings Income | Savings Expense |
|---|---|---|---|---|---|---|---|---|---|
| 20030825 11:21 | ML - Mail | 1581028 | | SBCC | ~E Snell Sr | $0.00 | $0.00 | $0.00 | $0.00 |
| 20030827 09:56 | ML - Mail | 1589402 | | SBCC | ~E SNELL SR.~SNELL, EMORY, . | $8.00 | $0.00 | $0.00 | $0.00 |
| 20030828 11:47 | EX - External Disbursement | 1601452 | 17495 | SBCC | ~SERVICE ON ACCT #03-10855RCL~BIN, LLC | $0.00 | $12.84 | $0.00 | $0.00 |
| 20030829 22:30 | CN - Canteen | 1606791 | | SBCC | ~Canteen Date : 20030829 | $0.00 | $8.50 | $0.00 | $0.00 |
| 20030903 13:08 | ML - Mail | 1613657 | | SBCC | ~SNELL SR. | $8.00 | $0.00 | $0.00 | $0.00 |
| 20030904 10:58 | EX - External Disbursement | 1625146 | 17562 | SBCC | ~SERVICE~BIN, LLC | $0.00 | $7.19 | $0.00 | $0.00 |
| 20030909 12:57 | ML - Mail | 1637486 | | SBCC | ~SNELL, E. | $8.00 | $0.00 | $0.00 | $0.00 |
| 20030910 07:54 | IS - Interest | 1648896 | | SBCC | | $0.00 | $0.00 | $0.00 | $0.00 |
| 20030916 10:01 | ML - Mail | 1685952 | | SBCC | ~SNELL | $8.00 | $0.00 | $0.00 | $0.00 |
| 20030916 15:46 | EX - External Disbursement | 1686983 | 17748 | SBCC | ~LEGAL~BIN,LLC | $0.00 | $10.00 | $0.00 | $0.00 |
| 20030919 08:32 | EX - External Disbursement | 1705782 | 17803 | SBCC | ~Service of process~Bin, LLC | $0.00 | $8.31 | $0.00 | $0.00 |
| 20030923 09:26 | ML - Mail | 1714670 | | SBCC | ~SNELL | $8.00 | $0.00 | $0.00 | $0.00 |
| 20030925 09:30 | EX - External Disbursement | 1730521 | 17883 | SBCC | ~LEGAL~BIN, LLC | $0.00 | $8.00 | $0.00 | $0.00 |
| 20031007 10:51 | ML - Mail | 1772302 | | SBCC | ~SNELL,SR. | $8.00 | $0.00 | $0.00 | $0.00 |
| 20031008 16:58 | IS - Interest | 1784242 | | SBCC | | $0.00 | $0.00 | $0.00 | $0.00 |
| 20031014 13:09 | EX - External Disbursement | 1815337 | 18098 | SBCC | ~SERVICE~BIN, LLC | $0.00 | $8.00 | $0.00 | $0.00 |
| 20031021 09:11 | ML - Mail | 1843479 | 1886 | SBCC | ~EMORY SNELL SR. | $8.00 | $0.00 | $0.00 | $0.00 |
| 20031029 15:37 | EX - External Disbursement | 1879761 | 18329 | SBCC | ~PERSONAL~BIN,LLC | $0.00 | $8.00 | $0.00 | $0.00 |
| 20031107 16:27 | IS - Interest | 1929244 | | SBCC | | $0.00 | $0.00 | $0.00 | $0.00 |
| 20031118 09:55 | ML - Mail | 1974080 | | SBCC | ~EG Snell | $8.00 | $0.00 | $0.00 | $0.00 |
| 20031124 14:14 | EX - External Disbursement | 2000588 | 18661 | SBCC | ~SERVICE~BIN,LLC. | $0.00 | $8.00 | $0.00 | $0.00 |
| 20031204 09:53 | ML - Mail | 2046600 | | SBCC | ~BIN | $5.00 | $0.00 | $0.00 | $0.00 |
| 20031205 10:05 | ML - Mail | 2051586 | | SBCC | ~BIN | $5.00 | $0.00 | $0.00 | $0.00 |
| 20031205 22:30 | CN - Canteen | 2053904 | | SBCC | ~Canteen Date : 20031205 | $0.00 | $4.26 | $0.00 | $0.00 |
| 20031209 13:40 | IS - Interest | 2065382 | | SBCC | | $0.00 | $0.00 | $0.00 | $0.00 |
| 20031211 11:08 | ML - Mail | 2091822 | | SBCC | ~BIN | $5.00 | $0.00 | $0.00 | $0.00 |
| 20031212 13:27 | ML - Mail | 2097297 | | SBCC | ~BIN CONSULTING | $10.00 | $0.00 | $0.00 | $0.00 |
| 20031212 22:30 | CN - Canteen | 2099352 | | SBCC | ~Canteen Date : 20031212 | $0.00 | $10.63 | $0.00 | $0.00 |
| 20031217 10:06 | IC - Transfer from Inmate to Club A/c | 2110415 | | SBCC | ~5 pictures ~PHOTO - Z13~PHOTO - Z13 | $0.00 | $7.50 | $0.00 | $0.00 |
| 20031219 10:37 | ML - Mail | 2128503 | | SBCC | ~BIN | $8.00 | $0.00 | $0.00 | $0.00 |
| 20031219 10:37 | ML - Mail | 2128612 | | SBCC | ~BIN | $8.00 | $0.00 | $0.00 | $0.00 |

LAW OFFICES
## HRONES AND GARRITY
LEWIS WHARF - BAY 232
BOSTON, MASSACHUSETTS 02110-3927

STEPHEN HRONES
JESSICA D. HEDGES
——
OF COUNSEL
DONALD HARWOOD
(ALSO MEMBER OF NEW YORK BAR)
JOSÉ LUIS SERPA
——
LIONEL PORTER
PARALEGAL

TELEPHONE (617) 227-4019
FACSIMILE (617) 227-3908
E-MAIL hrones@masscriminallawyer.com
WEBSITE www.masscriminallawyer.com

PAUL J. GARRITY
(ALSO MEMBER OF NEW HAMPSHIRE BAR)
——
NEW HAMPSHIRE OFFICE
——
14 LONDONDERRY ROAD
LONDONDERRY, NEW HAMPSHIRE 03053
TELEPHONE (603) 434-4106
FACSIMILE (603) 437-6714

March 8, 2004

Kathleen M Dennehy, Comm'r
Dept of Corr
50 Maple St, Ste 3
Milford, MA   01757-3698

**Re:  Emory Snell, Inmate No. W5919; Return of legal properly unlawfully confiscated on January 1, 2004**

Dear Commissioner Dennehy:

My client, Emory Snell, informs me that the mailroom has refused to post his legal mail, claiming that they are not required to do so under 103 CMR 481.10, even though he is indigent, and so they froze his account which stands at $24.40.

I would appreciate it if you would see that these improper activities at SBCC are remedied immediately.

Thank you for your prompt attention to this situation.

Sincerely,

Stephen Hrones

cc:  Emory Snell

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

EMORY G. SNELL,JR.,                         No.03-1788
    Petitioner,


vs.                                          DISTRICT COURT
                                             HABEAS CORPUS
                                             No. 2000-10271-REK

JOHN MARSHAL, et al.,
    Respondents.


PETITIONERS MOTION FOR EXTRAORDINARY RELIEF
WHEREAS, THROUGH MANDAMUS, THE MANDATE
ISSUED ON MAY 26, 2004 IS ENFORCED, OR IN THE,
ALTERNATIVE, A CONDITIONAL WRIT IS GRANTED


Comes now, Petitioner, Emory G. Snell,Jr., pro se, hereafter "Snell" or "Petitioner" and respectfully moves this most Honorable Court to allow that above entitled relief, for those reasons stated herein, especially, whereas, the Commonwealth destroyed Brady material exculpatory evidence under the aegis of the prosecutor, that is clearly and most convincingly supportive of Snell's only defensive claim of 'Actual Innocence.'

At bar, this Court on May 26, 2004, granted Petitioner's Certificate of Appealability, and specifically opined:

> "After reviewing the numerous filings in this case, we are unable to determine the precise reason the district court dismissed petitioner's habeas petition of January 27, 2000.  (Doc.#3).  Therefore, we grant the certificate of appealability, vacate the order of dismissal and remand the case to the district court with directions either to reconsider the merits of the petition or to provide a more detailed explaination of the reasons for its dismissal..."

Notwithstanding, the District Court first on June 1, 2004, ordered the Respondent's to answer in (20) days, and then prior to that expiration, on June 17, 2004,  issued a "Superseding Order," whereby, in accordance with Habeas Rule 4, commanded the Clerk to make service of process on the Office of the Attorney General for the Commonwealth of Massachestts.  Nevertheless, Petitioner now argues that the District Court did abuse its discretion, insofar as, the language of the Mandate is clear and unambiguous.  Accordingly, Petitioner contends that as this Court unequivocally stated, Petitioner filed the original Habeas Corpus application on January 27, 2000, and the remand is specifically for the

purpose of "the district court ... to reconsider the merits of the petition or to provide a more detailed explaination of the reasons for its dismissal."

Accordingly, ordering the Respondent's to now answer, defend or oppose, after four plus years, of which, as the docket so clearly reflects, some one-hundred and twenty motions and orders of the court reside, cannot advance the interests of justice, and therefore, Petitioner's relief in the nature of Mandamus must issue, alternatively, granting the writ, or re-instructing the District Court to obey this Court's clear and unambiguous command.

I.    Standard for Mandamus

An appeals court may exercise its power of advisory mandamus under the All Writs Act, 28 U.S.C. § 1651 (2000), when a petition "presents an issue of great importance and novelty, and one the resolution of which will likely aid other jurists, parties, and lawyers." In re Justices of Superior Court Dep't of Mass. Trial Court, 218 F.3d 11, 15 (1st Cir.2000).

Albeit, the district court was right to be cautious; the mandate rule requires the district court to respect the appellate mandate. United States v. Rowe, 268 F.3d 34, 41-42 (1st Cir.2001). Indeed, this is precisiely what Petitioner argues requiring the extraordinary relief of mandamus, whereas, as stated above, this Court did not order a Rule 4 service of process, but in fact, clearly commanded the district court "to reconsider the merits of the petition or to provide a more detailed explaination of the reasons for its dismissal."    Nevertheless, Petitioner did assert that he had a constitutional exculpatory material Brady evidence claim inter alia, and it had been properly developed in both the State court and the hundred plus pleadings putting the government on notice, and the district court continued to make rulings.

On remand, the district court is faced with formidably interesting issues, assuming that no superceding constitutional claim is developed, which has been the case in two recent Supreme Court decisions, one furthering Brady, Banks v. Dretke, 124 S.Ct. 1256 (U.S. 2004), and the other, in which "spontanous utterances," Crawford v. Washington, 124 S.Ct. 1354 (U.S. 2004), were decided in Petitioner's favor. Quite likely this federal law controls the question whether a nunc pro tunc order of the Appeals Court is to be given any effect for the purpose of correcting this most egregious case of manifest injustice.

As the Supreme Court stated in Perkins v. Matthews, 400 U.S. 379, 386-387 (1971); "in the interest of judicial economy, we shall not remand to the District Court for the making of a properly limited inquiry. The record is adequate to enable us to decide ... and we shall, therefore, decide that question."

Indeed, this Court should now act, and grant Petitioner's writ, as the record is extraordinary regarding the destroyed exculpatory material Brady evidence of an Independent alibi witness, whose testimony clearly placed the Petitioner, "prior to 7:A.M. [3-17-1995] he [Petitioner] was on the phone discussing checking out," when the State's star witness stated that "six-thirty, quarter of seven [3-17-1995], he saw [Petitioner] jump in his truck and race out of his driveway in a direction not normally taken."  Petitioner has strongly argued that he was not in his home, but in fact, at the Cape Codder motel, "discussing checking out."

Lastly, this Court must also focus on the four plus years the State has been availed of notice,

and made no attempt within that time to answer, defend or oppose.  Estoppel by silence requires an intent to mislead "or at least a willingness that others should be deceived...."  Huebner v. rosen, 81 Fed. appx. 276, 279 (C.A. 10 2003).


Wherefore, for those above stated reasons, cites and authorities -- those this most Honorable Court deems compelling, just and fair -- Petitioner respectfully moves for that aforesaid Habeas Corpus relief, forthwith.   So moved.


Date: July 17, 2004

Respectfully submitted,
by, the Petitioner,


Emory G. Snell,Jr., pro se
P.O. Box 8000
Shirley, Ma. 01464

## DECLARATION

I, Emory G. Snell,Jr., pursuant to 28 USC § 1746, under pain of perjury state the facts herein are true and correct to the best of my knowledge and belief.

### Proof of Service

I, certify that on this 17th day of July 2004, I did serve a true copy of the attached on the Office of the Attorney General, Criminal Division, 1 Ashburton place, Boston, ma. 02108, by way of indigent legal prison mail.

MAY 4, 2004

**EMORY G. SNELL, JR.**
PO Box 8000
Shirley, MA 01464-8000

HILLER B. ZOBEL
ASSOCIATE JUSTICE of the Superior Court
MIDDLESEX SUPERIOR
40 THORNDIKE STR.
CAMBRIDGE, MA. 02141



SUBJ: AGENCY ATTORNEY 'FRAUD on the COURT'

DEAR JUDGE ZOBEL:

I WRITE today ex parte, AS RECENTLY I HAVE UNCOVERED DOCUMENTS RELEVANT to SNELL v. BRENNAN, et al, MICV99-6309, that UNEQUIVOCALLY DEMONSTRATE that AGENCY COUNSEL, DAVID RENTSCH, DID INDEED, SUBORN PERJURY, AND KNOWINGLY ADVANCED SAME IN VIOLATION OF G.L. c. 221, ss 38, AS FRAUD on the COURT, ALBEIT, ERRONEOUSLY "FUSED" with MICV99-5599, in which there is NOT NEXUS, OTHER THAN DEFENDANTS IN BOTH BEING STATE D.O.C. EMPLOYEES, I CONTEND PRIOR to the FUSING, this COURT SAT, AND HEAR ARGUMENT, which SENSIBLY MAKES YOUR HONOR the best JUDGE OF THOSE HERETO ATTACHED PAPERS. BRIEFLY, RENTSCH SUBMITTED AN AFFIDAVIT OF CHARLES BLACK, that, FOR REASONS CLEAR IN THIS CASE, UNDERMINE MY CLAIM that AT the TIME DEFT. BRENNAN SADISTICALLY ORDERED MY CUFFING FROM BEHIND, A "CORRECTIONAL MEDICAL SERVICES MEDICAL RESTRICTION" WAS IN FORCE. ACCORDINGLY, the RESTRICTION SPECIFICALLY STATED FROM "11/9/98 thru 11/9/99," I WAS to be "CUFFED IN the FRONT."

—1—

*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*Legal Division*
*70 Franklin Street, Suite 600*
*Boston, MA 02110-1300*
*(617) 727-3300, Ext. 124*
*www.magnet.state.ma.us/doc*



**Argeo Paul Cellucci**
*Governor*

**Jane Swift**
*Lieutenant Governor*

**Jane Perlov**
*Secretary*

**Michael T. Maloney**
*Commissioner*

**Kathleen M. Dennehy**
*Deputy Commissioner*

**Nancy Ankers White**
*General Counsel*

June 14, 2000

Emory G. Snell, Jr. (W59191)
Souza-Baranowski Correctional Center
P.O. Box 8000
Shirley, MA 01464

RE: **Snell, Jr. v. Lt. Brennan, et al.**
    **Midddlesex Superior Court**
    **C.A. No. 99-6309-A**

Dear Mr. Snell:

Pursuant to the discovery order issued by Judge Zobel at the video conference of this case on May 24, 2000, I have enclosed the following documents:

- 103 DOC 620 (April 2000)   See 103 DOC § 620.11 which provides for "reasonable variances" from institutional rules, such as temporary restraint restrictions, to accommodate the medical needs of inmates.

- Affidavit of Charles Black, the nursing supervisor at SBCC, which was submitted in other litigation brought by you. Note that there was no "alternate restraint order" in effect for you on July 12, 1999. You had an operation to remove the surgical hardware from your right elbow on January 12, 2000. An alternate restraint order was in effect from January 14 through February 28, 2000. Prior to that time, your medical condition did not warrant the use of alternate restraints, according to Mr. Black. (Affidavit, par. 7)

*EXB.*
*"A"*

2

 Please note that I have still not received a copy of your
complaint or your motion to supplement the complaint in this
case.  I cannot respond to the complaint until I have copies of
those pleadings.

                              Sincerely,

                              David J. Rentsch
                              Counsel


Enclosures

cc:   Constance A. Carney, Assistant Clerk
      Midddlesex Superior Court, Room 12A

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

SUPERIOR COURT
CIVIL ACTION No. 96-0227-D

RASHAD RASHEED,          )
EMORY G. SNELL,          )
                         )
            Plaintiffs,  )
v.                       )
                         )
LARRY DUBOIS, et al.,    )
                         )
            Defendants.  )

### AFFIDAVIT OF CHARLES BLACK

I, Charles Black, hereby depose and say:

1.  I am the Nursing Supervisor at the Souza-Baranowski Correctional Center and employed by Correctional Medical Services the contract provider of medical services for the Massachusetts Department of Correction.

2.  On January 13, 1997 inmate Emory Snell broke his elbow which required surgery. It was on this date that surgical hardware was inserted into his elbow.

3.  On July 18, 1999 inmate Snell refused first outside trip for removal of the surgical hardware.

4.  On January 12, 2000, inmate Emory Snell had surgery to remove the surgical hardware from his right elbow.

5.  On January 14, 2000, an alternate restraint order was issued for inmate Snell in order for him to recuperate. It was to remain in effect from January 14, 2000 until February 28, 2000.

"A3"

6.  On February 28, 2000 inmate Snell was examined and it was determined the wound had healed properly and the order to use alternate restraints would no longer be required.

7.  Prior to January 14, 2000 Snell's medical condition did not warrant the use of alternate restraints.

I hereby certify this 3rd day of March, 2000 under the penalty of perjury that the foregoing is true and correct.

Charles Black

"A4"

# CORRECTIONAL MEDICAL SERVICES

## MEDICAL RESTRICTIONS

_C J_
**INSTITUTION**

_SNELL, EMORY_  _W59191_  _5/25/53_
**NAME**  **ID #**  **D.O.B.**

_11/9/98_
**DATE:**

TO: _UNIT TEAM_
**(D.O.C. DESIGNEE)**

**The above named inmate has been determined to have the following needs/restrictions due to a current medical condition:**

| TYPE: | DATE | (FROM) | TO |
|---|---|---|---|
| NO WORK STATUS | | | |
| LIGHT WORK STATUS | | | |
| BOTTOM BUNK | | | |
| SPECIAL EQUIPMENT (DESCRIBE BELOW) | | | |
| OTHER (DESCRIBE BELOW) _CUFF INFRONT_ | _11/9/98_ | | _11/9/99_ |

**TRANSPORTATION RESTRICTIONS:**

| | | | |
|---|---|---|---|
| NO WAISTCHAINS | | | |
| NO HANDCUFFS | | | |
| NO ANKLE RESTRAINTS | | | |
| VEHICLE WITH CAR SEATS | | | |
| MEDICAL VAN | | | |

**MEDICAL REASON:**

_F+ (R) ELBOW_

| | | | |
|---|---|---|---|
| SUBMITTED BY: | MD/PA/NP | DATE: _11/9/98_ | TIME: _0900_ |
| REVIEWED BY: | HSA | DATE: _11/9/98_ | TIME: _9:30am_ |
| APPROVED BY: | SITE MEDICAL DIRECTOR | DATE: _11/9/98_ | TIME: _0900_ |

_"B"_

# CORRECTIONAL MEDICAL SERVICES

## MEDICAL RESTRICTIONS

*S BCC*
INSTITUTION

*Snell, Emory*     *W5919 1*     *4/25/53*
NAME      ID #      D.O.B.

*1/14/00*
DATE:

TO: _____
(D.O.C. DESIGNEE)

The above named inmate has been determined to have the following needs/restrictions due to a current medical condition:

| TYPE: | DATE | (FROM) | TO |
|---|---|---|---|
| NO WORK STATUS | | | |
| LIGHT WORK STATUS | | | |
| BOTTOM BUNK | | | |
| SPECIAL EQUIPMENT (DESCRIBE BELOW) | | | |
| OTHER (DESCRIBE BELOW) | | | |

**TRANSPORTATION RESTRICTIONS:**

NO WAISTCHAINS

NO HANDCUFFS      *1/14/00*      *2/28/00*

NO ANKLE RESTRAINTS

VEHICLE WITH CAR SEATS

MEDICAL VAN

**MEDICAL REASON:**

*NO HANDCUFFS TO (R) ARM/WRIST TIL SPLINT*
*REMOVED BY MD. MAY WAIST CHAIN & CUFF TO*
*(L) ARM*

SUBMITTED BY: _____ DATE: *1/14/00* TIME: *1030*
MD/PA/NP

REVIEWED BY: _____ DATE: *1/14/00* TIME: *10 30 pm*
HSA

APPROVED BY: _____ DATE: *1/14/00* TIME: *1030*
SITE MEDICAL DIRECTOR

(ORIGINAL IN MEDICAL RECORD AFTER APPROVAL)
(COPY TO D.O.C. DESIGNEE)

CMS 8002 REV. 6/97

*"B2"*

To: Arthur Brewor, M.D.                          Date:  May 22, 1999
    Correctional Medical Services
    ~~Dedham, Ma.~~   99  LORING DR.
    _____  FRAMINGHAM, MA.  01702

Fr: Emory G. Snell, jr., W59191
    Souza-Baranowski Correctional Ctr
    Lancaster, Ma. 01523

Subject:  Denial of Proper and Necessary Medical Treatment

        Dr. Brewor,

            In regards to my previous letter, it appears that Dr. Fajava has
enlisted the aid of Dr. Enu, to deny and otherwise deprive me of proper and
necessary medical treatment concerning the surgery for my right olecranon,
and the continued burning.

            I have being seeking medical help since March 27, 1997.

            My last attempt to discuss my medical problem with Dr. Enu
was on April 22nd of this year. I needed to discuss with him my inability to be
hand cuffed from behind, due to the excruciating pain.

            Neither Drs. Fajava nor Enu have ordered any diagnostic testing to
determine the cause of this continuing pain. Neither have they spoken to me about
any thing related to this injury.

            I believe this is unprofessional and far below the recognized standard
of proper medical care.

            Please review my case and intervene on my behalf.

            Thank you in advance.


cc: Arnold S. Relman, M.D.
    Board of Registration in Medicine
    10 West Street
    Boston, Ma. 02111


*B3*



# The Commonwealth of Massachusetts
## Executive Office of Public Safety
### One Ashburton Place
### Boston, Massachusetts  02108

**Jane Swift**
*Governor*

*www.state.ma.us/eops*

Tel: (617) 727-7775
TTY Tel:  (617) 727-6618

**Jane Perlov**
*Secretary*

July 13, 2001

Emory G. Snell, Jr.
P.O. Box 8000
Shirley, MA 01464-8000

Dear Mr. Snell:

I am writing on behalf of Secretary Jane Perlov in response to your June 28, 2001 public records request.  Specifically, you request records pertaining to an alleged January 13, 1997 incident at MCI-Cedar Junction.  Please be advised that the Executive Office of Public Safety has forwarded your request to the Department of Correction for response.

I hope this information adequately addresses your concerns.

Sincerely,

Susan M. Prosnitz
General Counsel

cc: Nancy White, General Counsel, Department of Correction



# *The Commonwealth of Massachusetts*

## *Executive Office of Public Safety*
### *One Ashburton Place*
### *Boston, Massachusetts 02108*

**Argeo Paul Cellucci**
*Governor*

Tel: (617) 727-7775

**Jane Swift**
*Lieutenant Governor*

**Jane Perlov**
*Secretary*

January 26, 2000

Mr. Emory G. Snell, Jr.
Souza-Baranowski Correctional Center
P.O. Box 8000
Shirley, MA 01464

Dear Mr. Snell:

Your letter of December 28, 1999, to Secretary Jane Perlov has been referred to me for response. In that letter, you sought a special needs authorization for upfront cuffing or waist chains, due to medical issues with your right elbow, specifically the presence of hardware or k-wires.

A member of the Health Services Division of the Department of Correction looked into your request and reports that you recently had surgery performed on your right elbow for hardware removal. You are wearing a splint on that arm and your physician has ordered the following special need effective 1/14/00 through 2/28/00 for "no hand cuffs to right arm or wrist. May have waist chain with cuff to left arm until physician removes splint."

It appears that your request for special need cuffing has been ordered as is clinically indicated.

Sincerely,

Michael C. Bolden
Undersecretary of Public Safety

cc:     Michael T. Maloney, Commissioner

LEMUEL SHATTUCK HOSPITAL/RADIOLOGY DEPARTMENT
170 Morton St., J. P., MA 02130

HOSPITAL #09-70-06
PATIENT: SNELL, EMORY G.
DOB: 04-25-53
PT. ORIGIN:  MCI WALPOLE

DATE ORDERED:1-15-97
X-RAY REQUESTED: RT ELBOW
DATE OF SERVICE: 1-16-97
ORDERING MD:  OLADIPO
TECH:HD

Telephone #   727-1686
**************************************************************
CLINICAL INFORMATION:
rt olecranon process.
**************************************************************
January 16, 1997 — RIGHT ELBOW
Portable exam - 11:15 a.m.

The current study is obtained in the recovery room.

The two K-wires are visible within the olecranon.  It is possible
that one K-wire still protrudes from the ulna into the soft tissues
as the views obtained on the current examination are different than
the previous view.  Surgical clips around the elbow are also noted
on the current study.

Signed:  M. ANDERSON, M.D.   Dictated:1-17-97  Transcribed:1-17-97
Printed:  1-17-97            Date Report Sent: 1-17   CD

EXb. "D" 1-2.

"D"

b2/b7C

To: David Apfel
From: ▮▮▮
Re: Guard violence at Walpole
Date: March 15, 1997

    Thank you for looking into these allegations. I have listed the names of inmates who may have been assaulted by guards as well as their D.O.B. and the dates of the incidents where that information is available. All of the spellings are guesses and all of the other information is approximate.

7C

| NAME | D.O.B. | D.O.I. | PERPETRATORS |
|---|---|---|---|
| ▮▮▮ | ▮▮ | ▮▮ | ▮▮▮ |

Started in Med Unit, continued all the way back to 10 block. Has been treated at Shattuck. Currently in cast. May have been witnessed by inmate ▮▮▮

| ▮▮▮ and ? | | ▮▮▮ | ▮▮▮ In "Orientation One" |
| Emery Shell | | 1/13/97 | 10 Block Library. His arm was shattered and nose may have been broken. Treated at Shattuck. |
| ▮▮▮ | | ▮▮ or | 10 block. ▮▮▮ |
| ▮▮▮ | | ▮▮ | 10 Block |

    I am told that all of these inmates are interested in seeing this situation addressed and will speak with someone sincerely investigating what is happening. ▮▮▮ also know that what they are reporting is consistent with what we have been hearing for quite a while: that abuse of inmates is on the rise in Massachusetts prisons.

    See you in a few weeks.

28DA-BS-80808

SEARCHED ___ INDEXED ___
SERIALIZED ___ FILED ___

MAY 28 1997

FBI - BOSTON

"D2"

FD-204 (Rev. 3-3-59)

# UNITED STATES DEPARTMENT OF JUSTICE
Federal Bureau of Investigation

Copy to:     USA-Boston Attn: AUSA David Apfel
               DOJ

Report of:    SA ▮▮▮▮▮▮▮▮▮▮▮▮▮      Office: Boston
Date:        June 30, 1997

*b7C*

Field Office File #:
Bureau File #:    282A-BS-80808

Title:        UNSUB(S);
             MA CORRECTIONAL FACILITY,
             WALPOLE CORRECTIONAL INSTITUTE,
             EMORY G. SNELL-VICTIM;
             UNKNOWN VICTIM(S)

Character:    CIVIL RIGHTS-COLOR OF LAW

Synopsis:         Mr. Snell alleges that numerous correctional guards
have violated his civil rights by not allowing him access to Law
Library, moving him to new cell block, and strip searching him in
retaliation for filing civil suits against them. He also
indicated that on 1/13/97, they broke his arm while handcuffing
him to transport him. He indicated in the initiating letter,
that there are numerous other inmates who have also received
injuries from these officers and he is representing them in this
civil rights action. Federal Grand Jury subpoenas served on

*b3*
*b7C*

[black redaction box]

Specific subjects still not identified.

                    -P-

*Grand Jury* ▮▮▮▮▮▮▮▮▮

282A-BS-80808 #9

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

262FS05, 204      "D3"

282A-BS-80808
KM/fs

A Federal Grand Jury subpoena was issued

b3

b7C

[redacted] were brought before the Federal
Grand Jury on May 27, 1997. [redacted] are currently being
reviewed.

Grand Jur
Only Public

UPLOADED

WITH/TEXT ✓

WITHOUT/TEXT

BY

DATE

282A BS-80808 #7

262FS07.INS   "D4"

-2J (Rev. 5-30-85)

# FEDERAL BUREAU OF INVESTIGATION

| REPORTING OFFICE | OFFICE OF ORIGIN | DATE | INVESTIGATIVE PERIOD | |
|---|---|---|---|---|
| Boston | Boston | 06/30/97 | 5/20/97 - 6/25/97 | |
| TITLE OF CASE | | REPORT MADE BY | | TYPED BY: |
| UNSUB(S); MA CORRECTIONAL FACILITY, WALPOLE CORRECTIONAL INSTITUTE, EMORY G. SNELL-VICTIM; UNKNOWN VICTIMS(S) | *b7C* | SA ████████████ | | fs |
| | | CHARACTER OF CASE | | |
| | | CIVIL RIGHTS-COLOR OF LAW | | |

REFERENCE:

      Boston FD-610 dated 5/27/97.

                -PENDING-

ADMINISTRATIVE:

          No active investigation being conducted in this matter until ████████████████████████████████████████████ for review by case agent and AUSA David Apfel.

*b3*

| | SPECIAL AGENT IN CHARGE | DO NOT WRITE IN SPACES BELOW |
|---|---|---|
| APPROVED | | |

COPIES MADE:
2-BUREAU
1-USA-BOSTON ATTN:  DAVID APFEL
1-DOJ
1-BOSTON (282A-BS-80808)

SEARCHED_____ INDEXED_____
SERIALIZED_____ FILED_____

AUG 22 1997

FB: BOSTON

| DISSEMINATION RECORD OF ATTACHED REPORT | | | | | Notations |
|---|---|---|---|---|---|
| Agency | | | | | |
| Request Recd. | | | | | |
| Date Fwd. | | | | | |
| How Fwd. | | | | | |
| By | | | | | |

A★
COVER PAGE

282A-BS-80808

262FS04.263

DATE:                               1/14/97

PATIENT:                            SNELL, EMORY

ID NUMBER:                          W59191

DATE OF BIRTH:                      4/25/53

FACILITY:                           CEDAR JUNCTION

DIAGNOSIS:                          R/O FRACTURE

TYPE OF EXAMINATION:                RIGHT WRIST, FOREARM, & FACIAL BONES

DATE OF SERVICE:                    1/14/97

PHYSICIAN:

EVALUATION:

RIGHT HUMERUS:   EXAMINATION OF THE HUMERUS SHOWS NO EVIDENCE OF
FRACTURE.
RIGHT WRIST: EXAMINATION OF THE WRIST SHOWS A SLIGHTLY DISPLACED
FRACTURE THROUGH THE OLECRANON. THE FRACTURE INVOLVES THE
ARTICULAR SURFACE OF THE ELBOW JOINT.
FACIAL BONES:   THERE IS NO EVIDENCE OF ACUTE FRACTURE. THE BONES
ARE OF NORMAL FORM AND DENSITY AND THERE IS NO EVIDENCE OF
PROLIFERATIVE OR DESTRUCTIVE BONY DISEASE.

IMPRESSION:

RADIOLOGIST:                        C. MICHAEL WILLIAMS. M.D.

TRANSCRIBED BY:                     BEF

TECH:                               PB                     JAN 1 5 1997  A.M.
                                                                        P.M.
                                                           KHALID N. KHAN, M.D.

                                                                 0825

METACOMET OFFICE PARK, BUILDING 2, SUITE 202 - E. PROVIDENCE   RI 02914
401-331-3396/FAX 401-435-3991 -- TRANSCRIPTION 401-435-0116/FAX 401-435-4080

For TIMELY PAYMENT
attach PROVIDER CLAIM copy to your billing and mail to CMS.
Complete MEDICAL RECORD copy and return with Inmate.
Refer to Authorization No on all claims,correspondence,Inquires.

Case 1:04-cv-11800-RGS   Document 1   Filed 08/20/2004   Page 38 of 40

AUTHORIZATION NO:

0854AS2061



EXHIBIT
# 1

# Correctional Medical Systems
# Health Services Authorization

Inmate: SNELL, EMORY              Id: W-59191      DOB: 04-25-53    Date: 01-16-97

Institution: CEDAR JUNCTION                                        Site Id: 0854A

Referred By: KHAN M.D., KHALID                    Situation: Not Applicable

### HEALTH SERVICES AUTHORIZED

Extent Of Care: **Consult and Treat**          Location: **Outpatient Hospital**

Diagnosis: **FX FOREARM**                                          Code: **813.8**

Procedure: **Initial Fracture Care-Forearm fracture**

Description: **consult and treat
fx rt. olecranon process involving articular surface
operation/ surgery
pt. suffered traumatic fx rt. elbow. on 1/13/97. x-ray, labs attached**

Provider: **LSH - ORTHOPEDIC CLINIC**                    Provider No: **64OR**

Facility: **LEMUEL SHATTUCK HOSPITAL**                    Facility Id: **64**

### HEALTHCARE REPORT   (See Instructions on PROVIDER CLAIM COPY)

Significant Findings/Tests Completed/Diagnosis:

Treatment Provided:

Orders/Recommendations:

Physician Signature: _____          Date & Time: _____

## MEDICAL RECORD COPY
Complete and return with Inmate



# CORRE⌐ IONAL MEDICAL SE⌐ ICES

*H1*

## "IN HOUSE" CONSULTATION REQUISITION

Institution: _____

me: Snell Emmy                    J3          ID# W59191        D.O.B.: 4.25.5_

quest Date: _____

### SPECIALTY AREA (circle)

| | Dietary | Optometry | Mental Health | _____ Urgent |
| --- | --- | --- | --- | --- |
| | | | | _____ Routine |
| Site Clinics: | (Orthopedics) | Podiatry | Surgical | Other _____ |

Be Completed By Referring Physician

ason for Consultation (present illness and history - include summary of current problems(s) MEDS, x-ray and lab studies,

S/P ORIF RT elbow - c/o ↓ ROM  had PT for several times
in March/April 1998 c̄ ? improvement. Please evaluate
? need for additional PT.

Referring Physician: CRamanues̶k ANT.
(Signature & Stamp)

Be Completed By Consulting Physician

dings (Problems, Diagnosis) and Recommendations (Therapy, Meds, & Studies)

cancelled                              KULE FAJANA, M.D.

Consulting Physician: _____

Date: _____                 (Print Name)

Final Diagnosis: _____

Auth No: [ ]                                    Date of Service 2 / 26 / 95

## Provider Consultation Report  (Complete and Return with Inmate)

Snell, Jimmy                    ID: WS9191              DOB: /    /

Site ID: _____          Phone: _____

r: _____          Location: _____

**1 Services Authorized** (See Attached Request Copy)

curity reasons, inmates must NOT be informed of date, time or location of any proposed treatment or possible hospitalization.
· security considerations all tests and treatments to be scheduled by CMS

of Case

S/P Ct Elbow Olecranon Fracture ORIF 1/93

Associated pain in relation to hardware

X-ray showed ∩ healed fx

Ŧ local tenderness over non—
Ro m gion

is and Prescription Suggestions to be Reviewed by CMS Medical Director:

Ass. Painful hardware (L) Elbow

(R) elbow

ivalent medication substitution be used?    Y    N          | Followup needed?    Y    N

p needed, explain purpose

Re, Surgery: schedule for hardware
removal

_____ Date 2/26/95 CMS Nurse _____ Date /    /

endation After Review of Consultant's Report:    ☐ No Further Action    ☐ Implement the Following:

CMS Physician: _____          Date /    /

D94